IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Richard Slackman,                      Civil No. 08-0342-AA
                                                    OPINION AND ORDER
        Plaintiff,

   vs.

Life Insurance Company of North
America,

        Defendant.

_____

Ivan M. Karmel
Law Offices of Ivan M. Karmel
1023 SW Yamhill Street, Suite 200
Portland, Oregon 97205
     Attorney for plaintiff

William T. Patton
Lane Powell, PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204
     Attorney for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Pursuant to Fed. R. Civ. P. 56, the parties filed cross-motions for summary judgment. The court heard oral argument on June 22, 2009. The defendant's motion for summary judgement is granted and the plaintiff's motion for summary judgment is denied.

## BACKGROUND

This action is filed under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA"), and specifically pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under the terms of an employee benefit plan. ERISA authorizes beneficiaries to bring suit in federal court to recover benefits, enforce rights, or clarify rights under the terms of a plan. Id.

Plaintiff was employed by Wyndham Worldwide Corporation (Wyndham) as a sales associate with commission-based compensation. On March 4, 2007, plaintiff stopped working because he felt that he needed a break after experiencing periods of fatigue and anxiety. On April 24, 2007, plaintiff sought medical attention from his primary care physician, Tim Schoonmaker, Physician Assistant. Plaintiff complained of anxiety, fatigue, and difficulty sleeping. On April 30, 2007, plaintiff underwent a polysomnogram and was diagnosed with severe sleep apnea. On May 30, 2007, plaintiff met with a psychologist,

Page 2 - OPINION AND ORDER

Dr. Mark W. Clark, and was diagnosed with major depressive disorder, anxiety disorder, and adjustment disorder. During this session, Dr. Clark noted that plaintiff's treatment was to "feel passionate about something again" with the objective of "find[ing] a satisfying employment." Pl.'s Decl. Ex. C at 68. Plaintiff continued to work towards this goal until July 2, 2007, when he began treatment with a Psychiatric Mental Health Nurse Practitioner (Colby Rauch), who diagnosed plaintiff with severe major depressive disorder. Plaintiff also saw pulmonary specialists on June 28, 2007, who attributed his fatigue and sleepiness to his major depressive disorder and concluded that plaintiff's severe sleep apnea was being successfully treated.

    Plaintiff applied for long-term disability benefits with Life Insurance Company of North America (LINA), health insurance provider for Wyndham and defendant in this case. In order to qualify for long-term disability benefits, plaintiff had to prove that he became completely disabled, or unable to perform the material duties of his regular occupation, while covered under the benefits plan, and be continuously disabled for 26 weeks while under the care of a physician. Upon reviewing plaintiff's medical records and Behavioral Health Questionnaires submitted by his healthcare providers, LINA denied plaintiff's claim for long-term disability benefits due to insufficient information proving that plaintiff was continuously disabled from March 4, 2007.

Plaintiff appealed LINA's decision and submitted supporting letters from Dr. Clark, Ms. Cooper, P.M.H.N.P., Ms. Rauch, P.M.H.N.P., and Mr. Schoonmaker, P.A.. LINA upheld its decision denying plaintiff long-term disability benefits and found again, insufficient information proving plaintiff had been continuously disabled from the time he left work on March 4, 2007.

## STANDARDS

The denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan unambiguously grants discretion to the administrator or fiduciary, the standard of review shifts to abuse of discretion. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) (en banc)).

Here, the plan unambiguously grants discretion to the LINA administrator:

> [LINA] shall be responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determination. [LINA] shall have the authority, in its discretion, to interpret the terms of the Plan, including Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact.

Page 4 - OPINION AND ORDER

Pl.'s Decl. Ex. A at 26.

Therefore, the standard of review is abuse of discretion. However, because LINA both administers and funds the plan, a "structural conflict of interest" exists in that denying benefits to a plan participant has a financial affect on LINA. Abatie, 458 F.3d at 966 ("On the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them. On the other hand, such an administrator has an incentive to pay as little in benefits as possible to plan participants[.]"). This conflict of interest does not change the standard of review, but is a factor that must be weighed along with the facts and circumstances of the case. The conflict may weigh more heavily if, for example, the administrator provides inconsistent reasons for denial, fails to adequately investigate a claim or request for necessary evidence, fails to appropriately weigh claimant's reliable evidence, or has a history of denying benefits to deserving participants by misinterpreting the plan terms or by making decisions against the weighed evidence. Id at 968. However, if the administrator takes "active steps to reduce potential bias and to promote accuracy," then the conflict of interest factor will have little weight when determining abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2351 (2008).

///

Page 5 - OPINION AND ORDER

DISCUSSION

I. Conflict of Interest

To determine the effect that the conflict of interest may have had on the administrators' decision to deny benefits, the Court may consider evidence outside the administrative record. Id at 970.

Plaintiff relies on Glenn to assert that defendant's decision should be reviewed with a high degree of skepticism because the administrators failed to credit plaintiff's evidence, made a decision that was contrary to the weighed evidence in the record, provided an inadequate analysis of the evidence, and relied on assessments made by behavioral health specialists who were not qualified to review plaintiff's evidence. 128 S.Ct. at 2351.

The arguments that the administrators failed to credit plaintiff's evidence and made a decision contrary to the weight of the evidence are without merit. The administrators clearly reviewed and relied upon plaintiff's medical records, Behavioral Health Questionnaires, and letters of support from his attending health care professionals, when reaching their decision. The administrators have discretion when weighing evidence in the record and, although the administrators may not arbitrarily refuse to credit the opinions of treating physicians, "[n]othing in [ERISA] . . . suggests that plan administrators must accord

special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965, 1970 (2003).

Plaintiff also argues that the administrators inadequately considered the evidence in denying plaintiff long-term disability benefits. However, nothing in ERISA "impose[s] a heightened burden of explanation on administrators when they reject a treating physician's opinion." Id. The administrators here provided sufficient explanation for denial and thus did not abuse their discretion in not providing the plaintiff with detailed analysis of the evidence.

Plaintiff next argues that defendant's behavioral health specialists were not qualified to review plaintiff's medical records. In response, defendant submitted the resumes of both reviewing behavioral health specialists. The resumes reveal that both specialists are Registered Nurses with over 15 years of professional experience in mental health. Plaintiff also asserts that the administrators abused their discretion when they relied on the assessments of the behavioral health specialists, citing Westphal v. Eastman Kodak Co., 2006 WL 1720380 (W.D.N.Y 2006) and Case v. Continental Casualty Co., 289 F. Supp.2d 732 (E.D.Va. 2003). These cases are distinguishable because here, the assessments of the behavioral health specialists do not contradict the statements of plaintiff's health care providers. In the cases relied on by plaintiff, the disputed issue is the

Page 7 - OPINION AND ORDER

appropriate weight accorded the opinion of the non-treating doctor or nurse versus the treating physician.  Here, the specialists' assessments did not discount plaintiff's severe major depressive disorder but instead found there was insufficient evidence that plaintiff had been continuously disabled from the time he left work, and further found that the medical records make no mention of plaintiff's work capacity, restrictions, limitations, or return to work plan.  See Ex. C, P 141-145, 166.  Additionally, the abuse of discretion standard for the Second Circuit holds that the denial of benefits will be overturned if the court finds that the decision was made "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2nd Cir. 2005).  This "substantial evidence" requirement is not present in the Ninth Circuit abuse of discretion standard.  The Ninth Circuit holds that "a decision 'grounded on any reasonable basis' is not arbitrary and capricious, and that in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be 'clearly erroneous.'"  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004). Therefore, Westphal's and Case's holdings that reliance on an opinion of the non-examining physician or nurse was an abuse of discretion is based on a finding of "substantial evidence" that the claimant was

Page 8 - OPINION AND ORDER

disabled, not that the decision was made reasonably.

Therefore, relying on the administrative record and supplemental information provided by the defendant, I find no evidence that defendant's structural conflict of interest influenced its decision in denying plaintiff long-term disability benefits.

## II. Procedural Violations

"A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." Abatie, 458 F3.d at 972.

The plaintiff contends that defendant violated ERISA procedure when it failed to disclose that plaintiff's sales commissions from March 2006 to March 2007 were considered when denying benefits.  The only mention of administrators reviewing plaintiff's sales commission history was in the defendant's Memorandum In Support of Motion for Summary Judgment, where the defendant asserts that the plaintiff's commission history had been consistent up until the date he stopped working thus showing no signs of disability or diminished job capacity.  Def.'s Mem. Supp. Summ. J. 4, 14.  However, the plaintiff misinterprets ERISA's requirement that the administrator must:

> (1)   provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the <u>specific reason for such denial</u>, written in a manner calculated to be understood by the participant, and
> (2)    afford a reasonable opportunity to any

Page 9 - OPINION AND ORDER

>     participant whose claim for benefits has been denied
>     for a full and fair review by the appropriate named
>     fiduciary of the decision denying the claim.

29 U.S.C. §1133 (emphasis added).

Although plaintiff's commission history was considered by the administrators when reviewing plaintiff's application for long-term disability this was not the reason for denial. The purpose of this ERISA requirement is to provide the claimant with an opportunity to address the specific reason for denial. <u>Abatie</u>, 458 F.3d at 974 ("When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures."). Even if the administrators indicated in their first denial letter that plaintiff's commission history was considered, the denial was still due to insufficient medical information proving continuous severe functional impairment. Pl.'s Decl. Ex. C at 147. Plaintiff asserts that the commission history did not reflect his job performance because earnings were distributed after full completion of a sale, which often took a few months. However, this response on appeal would not address the specific reason for denial because it does not provide the administrator with medical evidence proving consistent severe functional impairment. Therefore, I find no procedural violations and this factor will

not be considered in determining abuse of discretion.

III. Review of the Record

Once the scope of the conflict has been established, the Court may only review evidence contained in the administrative record to determine if there was an abuse of discretion. Abatie, 458 F.3d at 970. The record here includes plaintiff's commission history, medical records, Behavioral Health Questionnaires, letters of support from his attending health care professionals, and application for long-term disability. An ERISA administrator abuses its discretion only if it "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bell, 410 F.3d 1173, 1178 (9th Cir. 2005).

First, the administrators thoroughly explained that the denial of benefits was due to inconsistency and insufficiency of medical information proving that plaintiff was completely or significantly disabled from the time he left work on March 4, 2007. The initial denial letter, dated August 30, 2007, listed the documents that were considered in plaintiff's application and explained:

> A claim for disability must be supported by medical restrictions and limitations which prevent you from performing your occupation. After reviewing the information provided, it was determined that your claim for disability is not supported at this time. The information that we received did not support such severe symptoms that you would

Page 11 - OPINION AND ORDER

>    not be able to work in your own occupation.  This is
>    demonstrated by your current treatment and the information
>    provided to us by your doctors.  You stopped working on
>    March 4, 2007, but were not seen by your doctor until April
>    24, 2007...We do not have medical information for the date
>    you stopped working to show why you were not able to
>    continue working, and we do not have medical information on
>    file to support severe psychiatric functional impairment.

Pl.'s Decl. Ex. C at 146-148.

In the letter denying plaintiff's appeal, dated November 27, 2007, the administrators reiterated the terms of the plan's requirement of 26 weeks of continuous disability, beginning on March 4, 2007.  The administrators stated that there was insufficient medical information to prove that plaintiff was suffering from a major depressive disorder from the time he stopped working.  The administrators provided plaintiff and his health care professionals numerous opportunities to address this concern but plaintiff failed to provide the administrators with the necessary documentation.  Based on the administrators' consistent and thorough explanation of the reasons supporting the denial, I find no abuse of discretion.

Next, I find that the administrators' interpretation of the plan was consistent with the plan's language. According to the plan:

>    The Insurance company will pay Disability Benefits if
>    an Employee becomes Disabled while covered under this
>    Policy.  A Disabled Employee must satisfy the Benefit
>    Waiting Period and be under the Appropriate Care of a
>    Physician.  Satisfactory proof of Disability must be
>    provided to the Insurance company, at the Employee's
>    expense, before benefits will be paid.

Page 12 - OPINION AND ORDER

Pl.'s Decl. Ex. A at 10.

An employee is "Disabled" under the plan if, because of injury or sickness,

> 1. he or she is unable to perform the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and
> 2. after Disability Benefits have been payable for 36 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

Pl.'s Decl. Ex. A at 6.

An employee is no longer "under the plan" if the employee is no longer in "Active Service." An employee is considered in "Active Service" as defined under the plan if one of the following conditions are met:

> 1. He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
> 2. The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

Pl.'s Decl. Ex. A at 19.

The Benefit Waiting Period is listed in the plan as 26 weeks and "Appropriate Care" is defined as:

> [T]he determination of an accurate and medically supported diagnosis of the Employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability that conforms to generally accepted medical standards,

Page 13 - OPINION AND ORDER

        including frequency of treatment and care.
Pl.'s Decl. Ex. A at 19.

    The administrators required that the plaintiff submit satisfactory proof that he had become disabled while in "Active Service," and that he was consistently disabled for 26 weeks from the date the plaintiff was no longer in "Active Service."  The administrators determined that this date was March 4, 2007, the date plaintiff ceased working.  The administrators' interpretation of the plan is consistent with the plain language of the plan and thus did not abuse their discretion in concluding that the plaintiff did not meet the requirements for long-term disability benefits under the plan.

    Finally, the administrators relied on reasonable findings of fact in denying plaintiff benefits.

    The defendant reasonably relied on the behavioral health specialists' review of medical records from all of plaintiff's health care providers, beginning April 24, 2007.  The specialists concluded that these medical records did not support severe psychiatric impairment preventing plaintiff from performing his regular occupation from March 4, 2007, to the date of plaintiff's claim.  Mr. Schoonmaker opined that plaintiff "had been suffering from severe depression since [November 6, 2006]" but did not recommend that plaintiff stop working at his regular occupation due to his symptoms or conclude that plaintiff was unable to

continue working. Pl.'s Decl. Ex. C at 154. While Dr. Clark opined that plaintiff's "delay in seeking services was not an indication of a lack of severity of symptoms, but of other aspects of his personality that made it difficult for him to admit to the need for behavioral health intervention," he was unable to attest to the severity of plaintiff's symptoms at the time he left work because he did not see plaintiff until May 30, 2007. Pl.'s Decl. Ex. C at 152. Additionally, because of plaintiff's delay in seeking medical attention, neither Dr. Clark nor Mr. Schoonmaker concluded that plaintiff's symptoms increased in severity from November 6, 2006, the date plaintiff first complained of ongoing fatigue, to March 4, 2007, the date plaintiff stopped working, which would have caused him to be disabled or unable to continue working. In fact, when Dr. Clark met with plaintiff, he suggested that plaintiff seek other employment and even recommended several books to aid in his job search. In sum, the behavioral health specialists' review was reasonable and thus the administrators did not abuse their discretion in relying on the specialists' findings.

Despite the fact that, six month later, in September, plaintiff's health care providers stated in the Behavioral Health Assessment that plaintiff was unable to work due to his depression and determined he was disabled at the time of his appeal, these records fail to prove that plaintiff was

Page 15 - OPINION AND ORDER

consistently suffering from severe psychiatric functional impairment from March 4, 2007, as the plan required.  Therefore, the administrators' decision to deny plaintiff long-term disability benefits was supported by the record and thus, the administrators did not abuse their discretion.

## CONCLUSION

Taking into account the weight of defendant's structural conflict of interest in the review of the administrative record, the court finds that the LINA administrators did not abuse their discretion in denying plaintiff long-term disability benefits.  Therefore, defendant's motion for summary judgment (doc. 28) is granted; and plaintiff's motion for summary judgment (doc. 20) is denied.  This case is dismissed.

IT IS SO ORDERED.

Dated this   7   day of July, 2009.


                           /s/ Ann Aiken
                          Ann Aiken
                    United States District Judge